In the

# United States Court of Appeals
### For the Seventh Circuit

No. 17-1036

HIGHWAY J CITIZENS GROUP, WAUKESHA COUNTY ENVIRONMENTAL ACTION LEAGUE, and JEFFREY M. GONYO,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 15-cv-994-PP — **Pamela Pepper**, *Judge*.

ARGUED OCTOBER 24, 2017 — DECIDED JUNE 5, 2018

Before EASTERBROOK, ROVNER, and HAMILTON, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Wisconsin proposes to renovate a 7.5-mile stretch of Highway 164 (formerly known as Highway J), a two-lane road in southern Washington County. It was built in the 1960s with 5 to 6.5 inches of asphalt, a pavement expected to last 22 years, and resurfaced in 2000 with another 2.5 to 3.5 inches, expected to extend the road's

life by 12 years. The new project entails repaving, recon-
struction near hill crests where drivers cannot see approach-
ing traffic, widening the lanes, making the shoulders flatter
and two feet wider, improving sight lines, updating guard-
rails, adding rumble strips, and introducing turn or bypass
lanes at some intersections. A 141-page environmental re-
port prepared between 2013 and 2015 concluded that the
renovation would not cause any significant environmental
effects but would reduce the accident and injury rate. (Acci-
dents are 63% more likely, per vehicle mile traveled, on this
stretch than on Wisconsin's other rural highways, and crash-
es that occur are 45% more likely to produce an injury.)

The Federal Highway Administration approved the envi-
ronmental report and federal funding in 2015, finding that it
is unnecessary to prepare an environmental impact state-
ment. See 40 C.F.R. §1508.4 (neither an environmental im-
pact statement nor an "environmental assessment," a sort of
junior-varsity environmental impact statement, is needed for
projects that "do not individually or cumulatively have a
significant effect on the human environment"). See also 23
C.F.R. §771.117(c)(26) (highway-renovation projects come
within the §1508.4 exclusion, with qualifications),
§771.117(d)(13) (same).

One local resident and two groups filed this suit, con-
tending that more study is essential. After denying a motion
for a preliminary injunction, see 2016 U.S. Dist. LEXIS 132388
(E.D. Wis. Sept. 27, 2016), the district judge read into the rec-
ord an oral opinion granting summary judgment for the de-
fendants. The judge concluded that the environmental report
shows that the project fits the criteria for categorical exclu-
sion from the need for a more comprehensive study. Plain-

tiffs have appealed. They want Wisconsin to abandon the project, contending that reducing the speed limit to 45 miles per hour would do enough to curtail accidents. But this suit concerns environmental effects, not the project's wisdom. Plaintiffs offer two principal arguments: that the Agency's failure to write a decision separate from the report shows that it has yet to give the project independent consideration, and that the report does not analyze cumulative effects of multiple highway-renovation projects.

The underlying statute (the National Environmental Policy Act or NEPA) calls for an environmental impact statement to accompany recommendations or reports on proposals for "major Federal actions significantly affecting the quality of the human environment". 42 U.S.C. §4332(2)(C). Renovating 7.5 miles of an existing two-lane road does not stand out as a major cause of a significant effect. Regulation 1508.4 establishes a "categorical exclusion" of projects that are not "major". Here is the language:

> *Categorical exclusion* means a category of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations (§1507.3) and for which, therefore, neither an environmental assessment nor an environmental impact statement is required. An agency may decide in its procedures or otherwise, to prepare environmental assessments for the reasons stated in §1508.9 even though it is not required to do so. Any procedures under this section shall provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect.

Section 1508.4, promulgated by the Council on Environmental Quality, covers all federal agencies. The Federal Highway Administration implemented it through 23 C.F.R. §771.117.

The Administration believes that renovating existing roads generally does "not individually or cumulatively have a significant effect on the human environment". The point of the years-long, 141-page study was not to question the validity of the regulations but to find out whether this renovation, in particular, needs a thorough evaluation because it would cause "[s]ignificant environmental impacts" (§771.117(b)(1)) or exceed "the constraints in paragraph (e) of this section" (§771.117(d)(13)).

The report concludes that the renovation of Highway 164 would not have a significant environmental effect. After the work is done it will be the same road, in the same place, with the same two lanes, and a little wider so that larger vehicles can safely use the shoulders (and are less likely to hit each other if they veer from the middle of a lane). Widening the road and improving sight lines by clearing some obstructions at roadside will use 38 acres of land in total (or 5 acres per mile of road). Of those 38 acres, 1.655 are wetlands, which will be filled; that's bad for some animals and plants, but the state will create 2.825 acres of new wetlands at another site. No threatened or endangered species would be adversely affected. The area through which the highway runs would remain hilly and forested. All in all, the report concluded, not much bad could happen, while drivers and their passengers would become safer. The report added that reducing the speed limit on this stretch of road might endanger drivers, because although some would obey the lower limit many would not, and data show that a variance in different vehicles' speeds is a major cause of accidents.

Plaintiffs tell us that, by signing off without writing a separate explanation, the Administration showed that it had

not taken this matter seriously. Yet neither a statute nor a rule requires the agency to write its own analysis. (Approving federal funding for a highway is neither adjudication nor rulemaking subject to the Administrative Procedure Act's requirements under 5 U.S.C. §§ 553, 554.) The principal questions the Administration had to decide were whether the project will have "[s]ignificant environmental impacts" (§771.117(b)(1)) or flunk the analysis under §771.117(d)(13). It was not necessary to add to what the report said about those subjects. And as judicial review of the agency's finding is deferential, see *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 375–77 (1989); *Sierra Club v. EPA*, 774 F.3d 383, 393 (7th Cir. 2014), its conclusion must be respected.

It would be unwarranted to infer from the lack of a separate writing that the subject has been slighted. District judges and magistrate judges frequently sign search warrants without writing opinions, but no one should infer that judges are automata who sign whatever is placed in front of them. They read and think but often find that the papers speak for themselves. Or consider this court. The vast majority of decisions are issued by three-judge panels, yet only one judge signs the opinion; the other two join silently. (In the United Kingdom, by contrast, every judge writes in many cases. Seriatim opinions were common in the United States, too, until John Marshall became Chief Justice.) Silence by a majority of the judges does not imply inattention, however. To the contrary, all members of the court read the materials carefully and ensure that each decision is sound before they approve it. Just so with the Federal Highway Administration. The Administration's staff was active in preparing the report, commenting on drafts and making suggestions. Only when the whole

process was complete, to its satisfaction, did the Administration sign off. No statute or rule requires more.

As for the argument that the 141-page report didn't analyze the cumulative effects of many different highway-repair projects: that's true but irrelevant. The Administration must analyze cumulative effects when deciding whether the category (renovating highways) comes within the exclusion. That's what the first sentence of §1508.4 says. But once a categorical decision has been made—and plaintiffs do not contest the Administration's finding in §771.117 that road renovations cumulatively do not amount to major federal actions with significant environmental effects—the remaining question is whether a particular project flunks the constraints of §771.117(e) or otherwise has "[s]ignificant environmental impacts" (§771.117(b)(1)). That's what this report investigated. As we've said already, judicial review is deferential, and we lack a compelling basis to upset the Administration's finding that the categorical exclusion of §1508.4 and §771.117 applies to this project. See also *Sierra Club v. United States Forest Service*, 828 F.3d 402, 410–11 (6th Cir. 2016) (an agency need not analyze cumulative effects when the categorical exclusion itself considers them).

Trying to include all cumulative effects of every project when analyzing any project is not feasible. And *Kleppe v. Sierra Club*, 427 U.S. 390, 409–15 (1976), holds that the exercise is not necessary. The Justices wrote that, although cumulative effects matter, the agency has discretion to consider when and how they are considered. It is not necessary to look at the Big Picture when evaluating every proposed project, the Court held. They said that about a huge project entailing the development of millions of coal-rich acres in the

Powder River Basin; the point is no less true about a road project in Wisconsin that uses 38 acres of land and adds about one net acre of wetlands.

One final subject calls for brief mention. Section 771.117(b)(2) requires analysis when a project occasions "[s]ubstantial controversy on environmental grounds". Plaintiffs say that their own opposition to the project, coupled with letters from several other organizations, adds up to "[s]ubstantial controversy on environmental grounds". The Administration did not act arbitrarily, however, in deciding that the environmental report was itself an adequate response to that controversy. Section 771.117(b) does not require an environmental impact statement whenever someone opposes a project; it requires only "appropriate environmental studies". The lengthy report is such a study.

AFFIRMED